IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

DEC - 8 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

WIDAD ZANGANAH )
)
     Plaintiff, )
)
v. )    1:10cv219(LMB/JFA)
)
THE COUNCIL OF CO-OWNERS OF )
FOUNTAINS CONDOMINIUM, INC. )
)
     Defendant. )

## MEMORANDUM OPINION

Before the Court is the defendant's Motion for Summary
Judgment [Dkt. No. 26]. For the reasons discussed in open court
and in this Memorandum Opinion, that motion will be granted, and
judgment will be entered in favor of defendant.

### I. Background

This civil action is, at its core, an employment
discrimination claim brought under Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e et seq. The plaintiff, Widad
Zanganah, is a native of Kurdistan, Iraq who was employed by
defendant, the Council of Co-Owners of Fountains Condominium,
Inc. ("Fountains Condominium"), from February 2003 through July
2008 as an engineer or maintenance technician at a condominium
located in Alexandria, Virginia. See Pl.'s Compl. ¶ 8. Zanganah
alleges that he was wrongfully terminated from that position as a
result of discrimination based on his race, ethnicity, and
national origin. Id. Zanganah's Complaint, which he originally
filed pro se, also raises claims for failure to promote, denial

of annual raises, and unequal terms and conditions of employment, as well as a breach of contract claim for alleged miscalculation of vacation time.  Id. ¶ 12.

The crux of the dispute in this case concerns the decision by the Fountains Condominium to fire plaintiff on July 17, 2008.[1] The stated reason for plaintiff's termination was that he had failed to report for work between June 23, 2008 and July 6, 2008, and from July 8, 2008 onwards, without prior approval and without sufficient accrued leave time.  See Def.'s Statement of Undisputed Material Facts ¶¶ 15-16; see also Def.'s Ex. A (Crebbs Decl.); Ex. B (Middleton Decl.).  On June 9, 2008, Zanganah had requested a period of extended leave from June 23, 2008 to July 3, 2008 so that he could visit family in Iraq.  See Aff. of Widad Zanganah ["Pl.'s Aff."] ¶ 47.  The following day, on June 10, 2008, the Fountains Condominium building manager, Christa McMaster, denied that request on the grounds that Zanganah did not have sufficient accrued leave time.  Id.  Zanganah then attended a meeting of the Board of Directors of Fountains Condominium ("the Fountains Board") on June 18, 2008, to again request extended leave.  Def.'s Statement of Undisputed Material Facts ¶ 7.  In his request, Zanganah claimed that he had accrued 240 hours of vacation time as of May 31, 2008, which would have

_____

[1] Specifically, the Board of Directors of Fountains Condominium is the entity that possesses hiring and firing authority for the condominium.

2

been sufficient to cover his ten-day trip.[2] Id. However, the defendant's evidence includes the report of an audit conducted by the Fountains Condominium's management company, Zalco Realty, Inc. That report indicated that Zanganah in fact only had a balance of 8.5 hours of leave available to him in June 2008.[3] Id. ¶ 12. As a result, the Fountains Condominium denied plaintiff's request for extended leave. Id.

The parties agree that Zanganah then failed to report to work at the Fountains Condominium from June 23, 2008 through July 6, 2008. Id. ¶ 10. He returned to work on July 7, 2008, and requested another significant period of leave, this time from July 8, 2008 through August 5, 2008. Id. ¶ 11. That request was also denied, again on the basis of a lack of sufficient accrued leave time. Id. Despite that denial, plaintiff took leave and did not report to work on July 8, 2008 or thereafter. As a

---

[2]    In his affidavit, Zanganah claims that the Board eventually agreed with his calculations and approved his request to take vacation time from June 23, 2008 through July 3, 2008. See Pl.'s Aff. ¶ 51. However, Zanganah has not submitted any documentation or corroboration to that effect, and Randall Middleton, one of the five members of the Fountains Board, explicitly denies that claim. See Def.'s Ex. B (Middleton Decl.) ¶ 6. In fact, Middleton's declaration indicates that the Board gave Zanganah 30 days to provide any records showing that he was entitled to 240 hours of leave, but that Zanganah failed to do so. Id. ¶¶ 7-8.

[3]    The Zalco Realty audit took account of both sick and leave time and found that Zanganah's available leave time totaled only 8.5 hours because he had a positive vacation balance of 27.5 hours, but his sick leave balance was at negative 19.0 hours.

3

result of that unexcused absence, the Fountains Board directed the building manager, Christa McMaster, to terminate Zanganah's employment.  Id. ¶¶ 14-16.  By a letter dated July 17, 2009, Zanganah was informed that he had been terminated for cause due to several lengthy periods of unexcused absences.  Id. ¶ 17.

On August 5, 2008, plaintiff filed charges with the Washington, D.C. office of the United States Equal Opportunity Employment Commission ("EEOC"), alleging that the Fountains Condominium had discriminated against him based on his race, ethnicity, and national origin.  See Pl.'s Compl. ¶ 13.  The EEOC ruled that it was unable to conclude that the information available established any violation of Title VII, and therefore issued plaintiff a right-to-sue letter on December 10, 2009.  Id. ¶ 14; Ex. 1.  Plaintiff received that letter on February 3, 2010, and timely filed this civil action, pro se, on March 9, 2010.

On November 1, 2010, defendant filed a Motion for Summary Judgment [Dkt. No. 26], arguing that plaintiff has failed to establish a prima facie case of unlawful discrimination and that the Fountains Board had a legitimate, non-discriminatory reason for terminating plaintiff's employment on grounds of absenteeism.  See Mot. for Summ. J. at 2.  Defendant also contends that plaintiff has failed to demonstrate the required causal nexus between any discriminatory animus on the part of plaintiff's direct supervisors and any adverse employment action taken

4

against him.  Id.  Finally, defendant moves for summary judgment
on plaintiff's breach of contract claim because Zanganah was an
at-will employee, and he has submitted no evidence of any
employment agreement that was allegedly breached.  Id.

## II.  Standard of Review

Summary judgment is appropriate where the record
demonstrates "that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a
matter of law."  Fed. R. Civ. P 56(c).  A genuine issue of
material fact exists only "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).  In
resolving a motion for summary judgment, the Court must view the
record in the light most favorable to the nonmoving party.  See
Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).
However, "the mere existence of a scintilla of evidence in
support of the [nonmovant's] position will be insufficient; there
must be evidence on which the jury could reasonably find for the
[nonmovant]."  Anderson, 477 U.S. at 252; see also Othentec Ltd.
v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008).

Moreover, "the mere existence of *some* alleged factual dispute"
cannot defeat a motion for summary judgment; the dispute must be
both "material" and "genuine," meaning that it must be capable of
changing the outcome of the lawsuit.  Bryant, 288 F.3d at 132.

5

Accordingly, a nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Rather, to survive a motion for summary judgment, a nonmoving party who bears the burden of proof at trial must submit sufficient, credible evidence to establish a reasonable finding in his favor as to each essential element of his claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

## III. Discussion

Summary judgment is appropriate in defendant's favor on Zanganah's Title VII claims because the evidence is insufficient to establish a prima facie case of unlawful employment discrimination based on racial, ethnic, or national origin animus, or any other improper intent. Rather, the undisputed material facts establish that plaintiff was terminated by an independent decision-maker, the Fountains Condominium Board of Directors, for a legitimate, non-discriminatory reason: namely, his unexcused absenteeism in June and July of 2008.

Summary judgment is also appropriate for defendant on plaintiff's breach of contract claim because Zanganah was an at-will employee, he has not submitted any evidence of any written employment contract that was allegedly breached by defendant, and the statute of limitations has run on any claim for breach of an oral employment agreement.

6

## A. Title VII Claims

Generally speaking, there are two ways for a plaintiff to avert summary judgment on an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). First, under the "mixed-motive" framework, a plaintiff may establish, through direct or circumstantial evidence, that discriminatory animus was a "motivating factor" behind an adverse employment decision. See 42 U.S.C. § 2000e-2(m); Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989); Hill, 354 F.3d at 285; see also O'Malley, Grenig, & Lee, 3C Federal Jury Practice and Instructions, § 171.20 (5th ed. 2000) (providing that to prevail on a claim of employment discrimination, a plaintiff must prove that the adverse employment action was, at least in part, motivated by his race or other protected status).

Alternatively, a plaintiff may proceed under the "burden-shifting" framework created in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of unlawful discrimination by showing: (1) that he was a member of a protected racial, ethnic, or other group; (2) that he experienced an adverse employment action; (3) that at the time of the adverse employment action, he was performing his job at a level that met the employer's legitimate expectations; and (4) that the position remained open or was filled by a similarly

7

qualified applicant outside of plaintiff's protected class.
McDonnell Douglas, 411 U.S. at 802-04; see also Diamond v. Colonial
Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); Brinkley v.
Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999).

If the plaintiff succeeds in establishing that prima facie
case, the burden shifts to the defendant to articulate legitimate,
non-discriminatory reasons for the adverse employment decision.  Hux
v. City of Newport News, Va., 451 F.3d 311, 314-15 (4th Cir. 2006).
This is a burden of production, not of proof or persuasion, so the
reasons proffered need not ultimately persuade the court, so long as
the defendant offers a legitimate and race-neutral rationale for its
decision.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509
(1993).  To overcome a defendant's non-discriminatory reasons, the
plaintiff must prove by the preponderance of the evidence that those
justifications were not the real reasons for the adverse decision,
but in fact were a pretext for discrimination.  See Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  This
third and final step "merges with the [plaintiff's] ultimate burden
of persuading the court that [the plaintiff] has been the victim of
intentional discrimination."  Tex. Dep't of Comm. Affairs v.
Burdine, 450 U.S. 248, 256 (1981).

In this case, Zanganah's claims for racial, ethnic, and
national origin discrimination fail under both the "mixed-motive"
and the McDonnell Douglas frameworks.  The defendant's Motion for

8

Summary Judgment will therefore be granted as to all of Zanganah's
Title VII claims.

## 1. Protected Group and Adverse Employment Action

The parties do not dispute that plaintiff is a member of a
protected group or that he suffered an adverse employment action.
Zanganah is a naturalized United States citizen, but he is also a
native of Iraq and is of Middle Eastern descent (specifically,
Kurdish heritage). See Pl.'s Compl. ¶ 8; Def.'s Statement of
Undisputed Material Facts ¶ 1. Zanganah therefore qualifies as a
member of a protected group based upon his racial and ethnic
background and his national origin. He also indisputably suffered
an adverse employment action on July 17, 2008, when the Fountains
Board directed Christa McMaster, the building supervisor, to
terminate his employment. Def.'s Statement of Undisputed Material
Facts ¶¶ 16-17.

## 2. "Motivating Factor" Analysis

However, Zanganah has failed to set forth sufficient evidence
to support a prima facie case that his termination was caused or
motivated by his race, ethnicity, or national origin. In fact,
plaintiff has submitted no evidence whatsoever to suggest that the
ultimate decision-maker in this case, the Fountains Board, was in
any way biased against him when it decided to order his termination.
Accordingly, Zanganah has not met his burden of setting forth
sufficient evidence to demonstrate that a protected classification

9

was a motivating factor in any adverse employment action taken against him.  See Diamond, 416 F.3d at 318-19.

Zanganah's claims in this case consist entirely of his conclusory assertions that several of his immediate supervisors treated him poorly as a result of discriminatory animus based on his Iraqi heritage.  For example, Zanganah alleges that Christa McMaster, the Fountains Condominium building manager and one of plaintiff's direct supervisors, made derogatory statements and obscene gestures to him regarding his race or ethnic heritage.  See Ex. H; Pl.'s Response to Interrogs. at 4 (Response to Interrog. No. 4).[4]  Zanganah also alleges that when he returned from a previous trip to visit family in Iraq in 2005, Bill Everngam, who was then serving as Zalco Realty's general manager, approached him and said "God bless America" in a manner that Zanganah interpreted as hostile or threatening.  Id.

Plaintiff further claims that in the wake of his 2005 trip to Iraq, both McMaster and Everngam "treated [him] in an increasingly derogatory manner, took steps to make [his] work harder, began asking [him] to do work that was outside [his] job responsibilities, and began manipulating or causing others to manipulate [his] hours, leave records, and pay."  Pl.'s Aff. ¶ 17.  By way of specific example, Zanganah contends, inter alia,

_____

        [4]  Zanganah never specifies what those remarks or obscene gestures were.

10

that his daily supervisors changed his job title from "Assistant Chief Engineer" to mere "maintenance technician," removed his authority over an assistant maintenance worker named Jose, manipulated his pay and leave records, yelled at him for staying overtime to fix a problem with an air conditioning unit, required him to perform menial and janitorial tasks outside of his job description, and publicly humiliated him by telling him on several occasions that he could not wait, congregate, or meet with others in the lobby or other public spaces of the condominium.  Id. ¶¶ 22-46.

Those allegations, if true, suggest a pattern of workplace harassment, and defendant never directly denies them.  However, the allegations do not establish that the harassment, if it occurred, was motivated by discriminatory intent.  Zanganah's own direct evidence of discriminatory animus is limited to a few isolated - and often unspecified - comments, which alone are not "sufficiently severe or pervasive to alter the conditions of employment."  Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142-43 (4th Cir. 2007). Moreover, aside from his own affidavit, Zanganah has failed to submit any corroborating depositions, declarations, or other evidence supporting his claim that his supervisors' actions were motivated by discriminatory intent.[5]

---

[5] The Court has some concern that because Zanganah chose to proceed pro se throughout the discovery process, retaining

11

In responding to a motion for summary judgment, the plaintiff bears the burden to "present[] probative circumstantial evidence to show that [the employer] acted with discriminatory animus" and that there was a nexus between such animus and any adverse employment action. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520-21 (4th Cir. 2006); see also Diamond v. Bea Maurer, Inc., 128 Fed. Appx. 968, 971 (4th Cir. 2005). However, the subjective beliefs of the plaintiff, without more, are insufficient to create a genuine issue of material fact regarding discriminatory intent. See Bryant, 288 F.3d at 134-35. Accordingly, the speculative accusations in Zanganah's affidavit cannot sustain his Title VII claims past the summary judgment stage. Id.; see also Warch, 435 F.3d at 515-16, 521.

Moreover, under well-established Fourth Circuit precedent, discriminatory statements or conduct by lower-level employees cannot support a claim for unlawful employment discrimination if they were not made, adopted, or approved by the relevant decision-maker bearing final authority for employment decisions. See Hill, 354 F.3d at 291 (holding that "an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision"); see also Smith v. Estes Express, No. 3:08cv574,

_____

counsel only at the summary judgment stage of the litigation, the evidentiary record was not fully developed. Plaintiff's counsel, however, never requested additional time to further develop the record, and it is now too late to do so.

2009 U.S. Dist. LEXIS 31542, *15 (E.D. Va. April 13, 2009)
(Payne, J.) (finding no nexus between racially insensitive
remarks and adverse employment action where the remarks were not
made by the ultimate decision-maker); Shaikh v. Loudoun Cnty,
Va., No. 1:07cv1036, 2008 U.S. Dist. LEXIS 53755, *12 (E.D. Va.
July 2, 2008) (O'Grady, J.) (granting summary judgment in favor
of employer where evidence of discriminatory animus was based
only on conduct of a biased subordinate having no principal
responsibility for plaintiff's termination).

     In fact, the Fourth Circuit recognizes a "cat's paw" theory
of employment discrimination only in extremely limited
circumstances where the formal decision-maker operates as such a
"rubber stamp" as to have effectively abdicated decision-making
authority to some lower-level subordinate. See Hill, 354 F.3d at
290-91 (recognizing liability based upon the actions of officials
other than the formal decision-maker only where the formal
decision-maker gave "blind approval[]" to "a decision, report or
recommendation actually made by a subordinate"). Thus, to
survive summary judgment based upon the allegedly discriminatory
motivations of a subordinate employee, such as McMaster or
Everngam, a plaintiff like Zanganah "must come forward with
sufficient evidence that the employee possessed such authority as
to be viewed as the one principally responsible for the decision
or the actual decision-maker for the employer." Id. at 291.

In this case, however, the Fountains Condominium Board, not McMaster or Everngam, made the ultimate decision to terminate plaintiff's employment. Although McMaster signed the July 17, 2008 letter informing Zanganah of his termination, she made clear in the letter that "Management . . . directed [her] to inform [Zanganah]" that he had been fired. Def.'s Ex. 1. The declaration of Randall Middleton, a member of the Fountains Board, as well as the declaration of McMaster herself, further confirm that fact. See Def.'s Ex. A (McMaster Decl.); see also Def.'s Ex. B (Middleton Decl.) ¶ 10 (indicating that the Board directed McMaster to fire Zanganah after obtaining the approval of all four Board members who were available to vote at the time, and subsequently obtaining the approval of the fifth and final Board member). In fact, according to the undisputed evidence submitted by defendant, the Fountains Board is the only body that possesses final hiring and firing authority for employees of the condominium association. See Def.'s Statement of Undisputed Material Facts ¶ 5; Def.'s Ex. B (Middleton Decl.) ¶ 4.

Zanganah has adduced absolutely no evidence - nor has he even alleged - that any member of the Fountains Board harbored any ill will or discriminatory animus towards him. He has also failed to submit any evidence to rebut defendant's assertions that McMaster and Everngam were not directly involved in his termination. Finally, to the extent that Zanganah is proceeding under a "cat's paw" theory, he has utterly failed to come forward

with any evidence that the Board was a mere dupe or rubber stamp for a lower-level employee's discriminatory intent.[6]

Therefore, the undisputed factual record establishes that, at most, McMaster and Everngam played a contributing role in the course of events that ultimately led to Zanganah's firing by a different decision-making body entirely. The Fourth Circuit has rejected liability in such circumstances, explicitly "declin[ing] to endorse a construction of the discrimination statutes that would allow a biased subordinate who . . . does not make the final or formal employment decision to become a final decisionmaker simply because . . . he has played a role, even if a significant one, in the adverse employment decision." Hill, 354 F.3d at 291. Accordingly, Zanganah has failed to establish a sufficient nexus between his supervisors' discriminatory animus, if any, and the adverse employment actions taken against him, and his Title VII claims fail under the "mixed-motive," or "motivating factor," approach.[7]

_____

[6]    Zanganah's theory of liability is somewhat unclear, but to the extent that he is arguing that the Fountains Board was the unwitting pawn of McMaster's or Everngam's attempts to manipulate his available leave time, that assertion is foreclosed by a contemporaneous letter sent to Zanganah on July 17, 2008 by the law firm of Segan, Mason & Mason, P.C., establishing that "*[t]he Board . . . reviewed Zalco's records*" regarding Zanganah's accrued leave and made an independent determination that Zanganah's leave was insufficient to cover his requested vacation. Def.'s Ex. 2 (emphasis added).

[7]    This line of reasoning applies equally to plaintiff's termination and to the claims in his Complaint and his affidavit that defendant discriminated against him by failing to promote him and failing to provide him with annual pay raises. See Pl.'s Compl. ¶¶ 7-8; Pl.'s Aff. ¶ 31. Not only has plaintiff submitted no evidence to buttress those claims beyond his own ipse dixit,

15

### 3. <u>McDonnell Douglas</u> "Burden Shifting" Analysis

Zanganah's claims also fail under the <u>McDonnell Douglas</u> "burden-shifting" framework because plaintiff has failed to meet his <u>prima facie</u> burden of establishing that he was performing at a level that met his employer's legitimate business expectations, or that his position remained open or was filled by someone else outside his protected class after his termination.[8]  Moreover, the Fountains Condominium has proffered an eminently plausible, legitimate, and non-discriminatory reason for Zanganah's termination (his weeks-long unapproved absenteeism), and plaintiff has failed to rebut that justification or to expose it as a pretext for unlawful discrimination.

As an initial matter, there is a factual dispute between the parties as to whether plaintiff actually had sufficient accrued leave time to take the relatively significant vacation he requested in June and July of 2008.  The defendant relies on an audit completed by Zalco Realty in June 2008, which revealed that as of May 30, 2008, Zanganah only had a balance of 8.5 hours of leave available.  <u>See</u> Def.'s Ex. C (Rogers Decl.) ¶¶ 6-9; <u>see also</u> <u>id.</u> at Ex. 1 (one-page audit report by Zalco Realty, showing

---

such employment decisions are also made exclusively by the Fountains Board, not by lower-level managers.  Accordingly, those claims suffer from the same fatal flaw as plaintiff's claim relating to his termination: the lack of any established causal nexus between the alleged discriminatory motivation and any ultimate adverse employment decision.

[8]    Indeed, neither party has submitted any evidence concerning whether Zanganah's position was ultimately filled by another employee, and if so, by whom.  The Court therefore cannot evaluate that aspect of the <u>McDonnell Douglas</u> <u>prima facie</u> test.

an earned leave balance of 8.5 hours for Widad Zanganah). By
contrast, plaintiff claims that the Zalco Realty audit was
erroneous and that he had at least 240 hours, or 30 days, of
leave available. See Pl.'s Aff. ¶¶ 49-50.

According to Zanganah, the discrepancies in the parties'
leave time calculations result, in significant part, from his
supervisors' alleged manipulation of his leave time by under-
reporting his accrued leave and by deducting days from his banked
leave time that should not have been deducted. Specifically,
Zanganah claims that the Fountains Condominium had agreed during
employment negotiations to allow him to accrue vacation time
during his first year of employment at a rate of eight hours per
month, rather than the four hours per month of vacation time that
first-year employees were typically entitled to receive under the
condominium's general policies, and that defendant then breached
that agreement by failing to grant him the additional leave time.
Id. ¶¶ 2-3. Zanganah also alleges that McMaster and Everngam
forced him to sign incorrect Leave Reports, improperly deducted
several use-it-or-lose-it "floating holiday" leave days from his
sick and vacation time, and improperly deducted hours from his
sick leave for his recovery from work-related injuries. Id. ¶¶
32-45. Finally, plaintiff states that his overtime hours were
also improperly reduced, and that he was only paid for 6.5 hours
of overtime in May 2008, when he had in fact worked 10 hours of
overtime during that month. Id. ¶ 46.

However, the evidence that plaintiff has submitted in support of his various claims is ambiguous at best and does not clearly support his allegations. For example, Zanganah has not submitted any documents or other evidence memorializing the purported agreement that he obtained during employment negotiations to grant him additional leave time beyond what first-year condominium employees were typically entitled to receive. Moreover, the bulk of Zanganah's documentation consists of time sheets or Leave Reports with unauthenticated handwritten calculations and annotations, and the Leave Reports end in October 2005, long before this dispute arose in June 2008. See Pl.'s Aff. Exs. 1-4.[9]

Additionally, even assuming, arguendo, that Zanganah's accrued leave time was manipulated or miscalculated, plaintiff has failed to meet his burden with respect to the third prong of the McDonnell Douglas test to prove that he was performing at a level that met his employer's legitimate expectations at the time of his termination. See McDonnell Douglas, 411 U.S. at 802-04. Zanganah agrees that he did not come to work on the business days

_____

[9] Neither party has submitted clear and comprehensive records of Zanganah's accrued leave time; Zanganah has only submitted Leave Reports from 2003 through 2005, and the Zalco Realty audit submitted by defendant is only a single page long and does not include any relevant background documentation or even indicate the sources of the various numbers on the page. See Def.'s Ex. C (Rogers Decl.) at Ex. 1 (single-page Zalco Realty audit). Moreover, the Leave Reports submitted by Zanganah do not appear to match Zalco Realty's calculations. Zanganah may therefore have a plausible wages and hours claim for miscalculation or denial of his accrued leave time. Standing alone, however, those numerical discrepancies do not establish a prima facie case of unlawful employment discrimination.

18

between June 23, 2008 and July 6, 2008. He also does not dispute
that he did not come to work on July 8, 2008 or thereafter.
Quite simply, therefore, far from performing his job duties in a
satisfactory fashion, as required by the third prong of the
McDonnell Douglas framework, Zanganah was not performing his job
duties *at all* when he was terminated by the Fountains Board on
July 17, 2008.

Finally, even if plaintiff could somehow meet his prima
facie burden under McDonnell Douglas, the Fountains Condominium
has proffered a legitimate, non-discriminatory reason for his
termination, which Zanganah has failed to adequately rebut.
Specifically, the record evidence establishes that under the
Fountains Condominium's Personnel Manual, the mere fact that an
employee has accrued leave time does not entitle him to take it
without approval or whenever he pleases. Rather, to use accrued
vacation time, the employee must first apply for and receive
advance authorization to use his accrued leave. See Def.'s Ex. 3
at 5 (Staff Policy Manual, stating that "[e]mployees shall notify
their supervisor in advance when they plan to be late or
absent"); see also Ex. A (McMaster Decl.) ¶ 7. In this case,
plaintiff's own evidence establishes that he did not have such
authorization because the building manager had already explicitly
denied both of his requests for leave. See Pl.'s Aff. at Exs.
12-13 (written denials of requests for leave by Christa

McMaster).[10]  Therefore, even if plaintiff did actually have 240 hours of banked leave, his decision to take matters into his own hands by unilaterally taking leave, despite his failure to obtain prior approval, provided a legitimate basis for the Fountains Board to order his termination.  See Ex. A (McMaster Decl.) ¶ 6; see also Def.'s Ex. 3 at 5 (Staff Policy Manual, stating that "[a]n employee who is absent three (3) consecutive days without reporting the reason shall be considered to have resigned"); see also id. at 8 (listing "[u]nexcused absences or tardiness" as grounds for discipline or termination).

Zanganah has failed to rebut that legitimate, non-discriminatory rationale for his termination, or to expose it as a pretext for unlawful discrimination.  Zanganah's argument again rests on his assertion that his leave time was manipulated or miscalculated.  However, even taking the facts in the light most favorable to Zanganah and assuming the allegation of

_____

[10] In his affidavit, Zanganah claims that the Fountains Board agreed with him at its June 18, 2008 meeting that the Zalco audit was erroneous and that he had sufficient accrued leave time to take his requested vacation.  However, plaintiff has not submitted any Board meeting minutes, witness declarations, or any other evidence to corroborate that claim, and plaintiff's conclusory assertions alone are insufficient to create a triable issue of fact on that point.  See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999) (holding that a plaintiff's "own assertions of discrimination in and of themselves are insufficient" to survive a motion for summary judgment). Moreover, according to Middleton's declaration, the Board in fact never agreed with Zanganah's leave calculations or approved his requested leave.  See Def.'s Ex. B (Middleton Decl.) ¶¶ 6-8. Finally, even assuming that plaintiff is correct that the Board ultimately agreed with his leave calculations, that still would not establish that he had authorization to use his accrued leave for the specific dates he requested in June and July of 2008.

miscalculation to be true, that fact alone cannot carry
Zanganah's burden of proving discriminatory treatment. Courts in
the Fourth Circuit have consistently held that mere disagreement
with the facts supporting an employee's termination does not
establish that the decision was a pretext for unlawful employment
discrimination. See Diamond, 128 Fed. Appx. at 972 ("When an
employer gives a 'nondiscriminatory reason for discharging the
plaintiff, it is not our province to decide whether the reason
was wise, fair, or even correct, so long as it truly was the
reason for plaintiff's termination.'") (quoting Hawkins v.
Pepsico, Inc., 203 F.3d 274, 279 (4th Cir. 2000)); see also
Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007)
(affirming summary judgment for employer where plaintiff could
not show that decision to terminate him was pretextual because he
presented no evidence that he was fired in retaliation, rather
than because of his employer's belief that he had threatened his
supervisor, despite the fact that plaintiff strenuously denied
ever having made such threats).

     In this case, even if the Fountains Board erred in denying
plaintiff's requested leave, there is no evidence that the error
was made as a result of any racial animus or other discriminatory
motivation on the part of any of the five Fountains Board
members. Ultimately, therefore, Zanganah simply cannot
"persuad[e] the court that a discriminatory reason more likely
motivated the employer or . . . show[] that the employer's
proffered explanation is unworthy of credence," and his Title VII

claims fail under the <u>McDonnell Douglas</u> approach.  <u>Burdine</u>, 450
U.S. at 256 (citing <u>McDonnell Douglas</u>, 411 U.S. at 804-05).

## B.  Breach of Contract Claim

Summary judgment is also appropriate in defendant's favor on
Zanganah's breach of contract claim because Zanganah was an at-
will employee, and he has not submitted any written contract or
other evidence of any employment agreement which he claims that
the Fountains Condominium breached.

Plaintiff's breach of contract claim is based on his
assertion that defendant miscalculated his leave time by failing
to grant him eight hours of vacation leave per month in his first
year of work.  <u>See</u> Pl.'s Aff. ¶¶ 2-3.  However, plaintiff has not
presented any evidence of a written agreement to allow him to
accrue that much leave time in his first year of employment, and
the standard employee policies at the Fountains Condominium only
allow for first-year employees to receive four hours of vacation
time each month.  <u>See</u> Def.'s Ex. 3 at 10 (Staff Policies Manual,
providing that "[a]nnual leave is accrued (earned) at the rate of
one-half day per month for the first year of employment (6 days
per year) and at the rate of one day per month for each year
thereafter (12 days per year)").

Moreover, to the extent that Zanganah's breach of contract
claim is based upon the breach of an oral employment agreement,
that claim is untimely.  The statute of limitations for breach of
an oral contract under Virginia law is three years.  Va. Code
Ann. § 8.01-46.  The statute of limitations accrues on the date

of breach, not the date that the resulting damage is discovered. Id. § 8.01-230; see also Browning v. Tigers Eye Benefits Consulting, 313 Fed. Appx. 656, 664 (4th Cir. 2009). Therefore, if Zanganah's claim is that defendant breached an oral agreement to grant him additional leave time during his first year of employment, back in 2003, his breach of contract claim is clearly time-barred. Additionally, even to the extent that Zanganah claims that his cause of action arose at a later date, when his accrued leave time was allegedly manipulated, he has only submitted Leave Reports that would document such manipulation through October 2005; Zanganah's Complaint, however, was not filed until March 9, 2010, meaning that his breach of contract claim would still fall well outside the applicable three-year statute of limitations.

**IV. Conclusion**

For the reasons stated above, defendant's Motion for Summary Judgment [Dkt. No. 26] will be GRANTED by an Order to be issued along with this Memorandum Opinion.

Entered this __8th__ day of December, 2010.

/s/

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia